IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **DOYLE OLLIS, JR.,** | CASE NO. 8:05CV119 |
| Plaintiff, | |
| vs. | **MEMORANDUM** |
| | **AND ORDER** |
| **HEARTHSTONE HOMES, INC.,** a Nebraska corporation, | |
| Defendant. | |

This matter is before the Court on Defendant HearthStone Homes, Inc.'s Summary Judgment Motion (Filing No. 21). The matter has been fully briefed, and the Court has considered the evidence submitted. For the reasons stated below, the motion will be granted in part and denied in part.

## FACTS

The following facts are undisputed. Defendant HearthStone Homes, Inc. ("HearthStone") is a Nebraska corporation in the business of building and selling houses. (Filing No. 23, Ex. 1 ("Pamela Smith Aff.") ¶3). HearthStone hired Plaintiff Doyle Ollis, Jr. ("Ollis") on August 28, 2000, as a sales associate. (Pamela Smith Aff. ¶3; Filing No. 23, Ex. 3 ("Ollis Depo.") 9:13-18). On September 1, 2002, HearthStone promoted Mr. Ollis to the position of Lead Sales Agent. ("Ollis Depo. 52:9-11; Filing No. 23, Ex. 2 ("John Smith Aff.") ¶2).

HearthStone hired Sarah Audas as a sales associate on or about October 14, 2003, and Ms. Audas worked under Mr. Ollis's supervision. (Pamela Smith Aff. ¶6; John Smith Aff. ¶2; Ollis Depo. 110:18-111:5). On Friday, October 24, 2003, Ms. Audas informed Pamela Winters Smith, HearthStone's director of human resources, and John Risley, HearthStone manager, that Mr. Ollis was sexually harrassing Ms. Audas. (Pamela Smith

Aff. ¶8). Pamela Winters Smith, John Risley, Sherman Thurston, and John Smith met with Ms. Audas to discuss her complaint on October 27, 2003. (Pamela Smith Aff. ¶9; John Smith Aff. ¶2). Ms. Audas was advised to make a written complaint against Mr. Ollis, and she sent an e-mail to Ms. Smith detailing the alleged sexual harassment. (Pamela Smith Aff. ¶9). In the e-mail, Ms. Audas reported "the most offensive" of the numerous comments Mr. Ollis had made to her. (Filing No. 23, Ex. 1-A ("Audas E-mail")). Ms. Audas alleged that Mr. Ollis commented on Ms. Audas's undergarments and attire, asked questions about Ms. Audas's sexual relationship with her husband, commented on his own sexual relationship with his wife, and commented on the size of female clients' breasts. (*Id.*).

On October 28, 2003, Ms. Smith, Mr. Smith, and Mr. Risley met with Mr. Ollis to discuss Ms. Audas's allegations about "an uncomfortable work environment" and to ask Mr. Ollis to give HearthStone a statement about any information he might have regarding the situation with Ms. Audas. (Pamela Smith Aff. ¶2; Ollis Depo. 111:6-112:16). Mr. Ollis sent an e-mail to Ms. Smith that contained his "recollections and conversations between Ms. Audas" and himself. (Ollis Depo. 114:2-115:1). In the e-mail, Mr. Ollis stated: "As we became more comfortable the conversations at times would lead to sexual content." (Filing No. 23-14 at 18-19 ("Ollis E-mail")). Mr. Ollis expressed his belief that he and the members of his team considered Ms. Audas as "one of the guys." (*Id.*). He admitted that he made an inappropriate comment to Ms. Audas regarding her undergarments and immediately apologized. (*Id.*). He further stated that he did not "get the impression she felt uncomfortable or that she was in a 'hostile' environment." (*Id.*).

Mr. Ollis was terminated by HearthStone on October 31, 2003. (Pamela Smith Aff. ¶14; John Smith Aff. ¶2). HearthStone paid Mr. Ollis two months' compensation as severance pay. In the fall of 2003, Mr. Ollis was earning approximately $95,000 per year.

2

(Pamela Smith Aff. ¶6; John Smith Aff. ¶2). The decision of whether to pay severance compensation and the amount of severance pay provided by HearthStone has always been in the sole discretion of HearthStone. (Pamela Smith Aff. ¶2). HearthStone has paid various amounts of severance pay to terminated employees and, in some cases, has offered no severance pay at all. (*Id.*).

On May 4, 2004, Mr. Ollis filed a Charge of Discrimination against HearthStone with the Nebraska Equal Opportunity Commission ("NEOC"), alleging that HearthStone discriminated against him based on his religion and retaliated against him. (Ollis Depo. 147:16-24). The NEOC issued a Commission Determination on December 14, 2004, stating that the evidence was insufficient to support allegations of discrimination. (*Id.* 159:6-17). Mr. Ollis filed the Complaint in this action on March 15, 2005. In his Answers to Interrogatories, Mr. Ollis stated that the only discriminatory and retaliatory actions taken against him were the termination of his employment with HearthStone and the failure of HearthStone to pay Mr. Ollis severance pay similar to that paid to other employees. (FiliIng No. 23, Ex. 4 ("Answers to Interrogatories") at 9).

Since the beginning of Mr. Ollis's employment, HearthStone has had a program called Mind, Body, Energy ("MBE") available to employees. (Pamela Smith Aff. ¶ 17; John Smith Aff. ¶2). For the first two years of his employment, Mr. Ollis did not participate in the MBE program. (Ollis Depo. 73:12-74:13). Mr. Ollis participated in the MBE program during his final year of employment with HearthStone. (*Id.*). He requested a standing appointment for an MBE session each month. (*Id.*). Mr. Ollis testified that he was encouraged by John Smith to participate in the MBE program. (Ollis Depo. 95:6-95:9). Initially, Mr. Ollis stated on his Charge of Discrimination filed with the Nebraska Equal Opportunity Commission ("NEOC") that he was required to participate in the MBE program;

however, he later requested that the word "required" be replaced with "highly encouraged." (Ollis Depo. 154:12-155:23).

At the time that HearthStone terminated Mr. Ollis, approximately sixty percent of HearthStone's ninety employees did not participate in the MBE program. (Pamela Smith Aff. ¶20). At any given time during Mr. Ollis's employment with Hearthstone, between fifty percent and eighty percent of HearthStone employees were not participating in the program. (*Id.*). Mr. Ollis testified that he knew of at least three HearthStone employees who refused to participate in the MBE program but were not terminated or disciplined. (Ollis Depo. 157:25-158:16). No representative of HearthStone ever made any negative or derogatory remarks about Mr. Ollis's religion. (Ollis Depo. 78:24-79:11).

Mr. Ollis claims that HearthStone violated both Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000 *et seq.*) and the Nebraska Fair Employment Practice Act (Neb. Rev. Stat. § 48-1101 *et seq.*) and is liable to him for damages under theories of: 1) religious-based employment discrimination; and 2) retaliation. (Filing No. 1 ("Complaint")). HearthStone has moved for summary judgment. (Filing No. 21).

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## DISCUSSION

In order to survive an employer's motion for summary judgment in an employment discrimination case, the plaintiff must either: 1) produce direct evidence of discrimination or 2) create "the requisite inference of unlawful discrimination" through the *McDonnell Douglas* three-step burden shifting analysis. *Russell v. City of Kansas City*, 414 F.3d 863, 866 (8th Cir. 2005); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "[D]irect evidence is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that

5

an illegitimate criterion actually motivated' the adverse employment action." *Griffith v. City of Des Moines,* 387 F.3d 733, 736 (8th Cir. 2004) (quoting *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir.1997)).

If there is no direct evidence of discrimination, the plaintiff may survive a summary judgment motion by meeting the criteria of the *McDonnell Douglas* three-part analysis. A plaintiff proceeding under the three-part, burden-shifting standard set forth in *McDonnell Douglas* must first establish a prima facie case of discrimination. Once the prima facie case is established, the burden shifts to the defendant to articulate a non-discriminatory reason for the adverse employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). If the defendant articulates such a reason, the plaintiff must respond with sufficient evidence to demonstrate that the proffered reason was really a pretext for intentional discrimination. *Id.*

Mr. Ollis claims that HearthStone's President, John Smith, has a belief structure called Mind Body Energy and that Mr. Smith "employs consultants to test a person's muscles to determine a body's positive or negative energy accumulated both in this life and in past lives lived by an individual and ultimately to cleanse the body of any negative energy." (Ollis Depo. 79:15-80:15). Mr. Ollis states that he was required to attend courses in California, which included teachings of Hinduism and Buddhism. (*Id.* 17:17-19:25). He also claims that he was required to carry a card with him that outlined HearthStones' values, and that he was required to recite the values at the opening of each employment function. (*Id.* 21:25-24:1; 27:8-22, 29:9-20). Mr. Ollis claims that when he and another employee were not working well together, Mr. Smith required the two men to attend counseling together with an MBE consultant to determine the source of the negative energy between them. (*Id.* 58:2-13; 84:1-87:21).

Mr. Ollis claims that his required participation in MBE violated his religious beliefs. (*Id.* 31:23-32:14). He claims that he complained to two of his direct supervisors, Rachel Langsford and John Risley, that he felt required to participate in Mr. Smith's belief system, and that he was told that he would need to participate to the extent necessary to appear that he believed in the program. (*Id.* 34:4-35:8). Mr. Ollis said that this was the reason why he scheduled a standing monthly appointment and the reason why occasionally he would cancel. (*Id.* 73:12-74:13). He claims that HearthStone kept a record of his attendance at MBE. (*Id.*). HearthStone employee, Rachel Langford, claims that Mr. Smith also required her to participate in MBE activities. (Filing No. 30, Ex. 3 ("Langford Aff.") ¶¶ 2,6-11). Ms. Langford also states that Mr. Smith hired Ms. Audas and placed her under Mr. Ollis's supervision "in order to teach [Mr. Ollis] something." (*Id.* ¶¶ 16,17). Mr. Ollis claims that his supervisor, Mr. Risley expressed to him that he was being terminated because he failed "muscle testing," which Mr. Ollis claims is a central tenent of Mr. Smith's religious beliefs. (*Id.* 38:12-22).

On the other hand, HearthStone maintains that Mr. Ollis was terminated due to "poor judgment and lack of leadership" primarily in his conduct toward Ms. Audas. (Pamela Smith ¶14; Ollis Depo. 131:18-23). HearthStone claims that Mr. Ollis also exhibited "poor judgment and lack of leadership" toward a male associate who had previously worked with Mr. Ollis. (Pamela Smith Aff. ¶13). HearthStone claims that Mr. Ollis's involvement or lack of involvement in MBE was not a factor in the decision to terminate Mr. Ollis's employment or the amount of severance pay Mr. Ollis was given. (*Id.*). HearthStone claims that Mr. Ollis  never told Mr. Smith that any of HearthStone's practices were contrary to Mr. Ollis's religious beliefs. (Ollis Depo. 46:23-47:5; John Smith Aff. ¶3).

***Religious Employment Discrimination***

7

"To establish a prima facie case of religious discrimination, a plaintiff must plead and prove that '(1) he has a bona fide belief that compliance with an employment requirement is contrary to his religious faith; (2) he has informed his employer about the conflict; and (3) he was discharged because of his refusal to comply with the employment requirement.'" *Johnson v. Angelica Uniform Group, Inc.*, 762 F.2d 671, 673 (8th Cir.1985) (quoting *Brown v. General Motors Corp.*, 601 F.2d 956, 959 (8th Cir.1979)). Mr. Ollis claims that he was discriminated against when he was terminated and when he did not receive severance pay in an amount similar to that paid to other employees. (Answers to Interrogatories at 9).

It is true that Mr. Ollis admitted he was only highly encouraged to participate in the MBE program; however, Mr. Ollis also testified that he was required to attend a joint MBE session with another employee with whom Mr. Ollis was not working well. He also testified that he was required to attend a session in California. Mr. Ollis claims that he notified two of his supervisors that the MBE program conflicted with his religious beliefs. Finally, Mr. Ollis claims that his supervisor, Mr. Risley, suggested that Mr. Ollis was fired because he failed the "muscle test." The burden of establishing a prima facie case in employment discrimination cases is minimal. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). Viewing the evidence in the light most favorable to Mr. Ollis, the Court finds that Mr. Ollis has established a prima facie showing of religious discrimination for purposes of the *McDonnell Douglas* analysis.

Likewise, the Court finds that HearthStone has satisfied its burden of articulating a legitimate, nondiscriminatory reason for terminating Mr. Ollis's employment by demonstrating that Mr. Ollis was fired four days after Ms. Audas reported that Mr. Ollis had

8

sexually harassed her. HearthStone has presented sufficient evidence that Mr. Ollis was fired for "poor judgment and lack of leadership."

In the third step of the *McDonnell Douglas* analysis, Mr. Ollis must respond with sufficient evidence that the proffered reason was really a pretext for intentional discrimination. Mr. Ollis testified that his supervisor, Mr. Risley, expressed to Mr. Ollis that he had been fired because he failed the muscle test, and Mr. Ollis stated that this was a central tenant of the MBE program and the president of HearthStone, Mr. Smith's, belief system. Additionally, Mr. Ollis testified that another male employee allegedly made inappropriate sexual comments to another female employee, and that male employee was not fired after the sexual harassment was reported. (Ollis Depo. 58:23-63:9). Ms. Langford also stated in her affidavit that Mr. Smith hired Ms. Audas to teach Mr. Ollis something. (Langford Aff. ¶¶16,17). Viewing the evidence in the light most favorable to Mr. Ollis, the Court finds there are issues of material fact precluding summary judgment on the issue of whether the termination of Mr. Ollis was based on religious discrimination.

On the issue of whether Mr. Ollis was discriminated against based on the amount of severance pay he received, the Court finds that even if Mr. Ollis can sustain his minimal burden of establishing a prima facie case of religious discrimination, he has failed to present any evidence that any difference in the amount of severance pay he received was based on religious discrimination. The only evidence Mr. Ollis has submitted to the Court on this issue is letters reflecting the termination and severance of other HearthStone employees dated 2002 and 2003. There is no indication that any discrepancy in the amount of severance pay other employees received was based on their religious beliefs or their willingness to participate in the MBE program. The Court also finds that HearthStone has articulated a legitimate, non-discriminatory explanation for the amount

of severance pay Mr. Ollis received; and Mr. Ollis does not dispute the fact that HearthStone was under no obligation to award any severance pay to employees, nor the fact that HearthStone had occasionally awarded no severance pay to terminated employees. (Filing No. 29 ("Opposition Brief") at 7, ¶25). HearthStone's summary judgment motion is granted on the claim of religious discrimination based on the amount of severance pay Mr. Ollis received.[1]

### *Retaliation*

"To establish a prima facie case of retaliatory discrimination, a plaintiff must show: (1) [he] engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal connection existed between participation in the protected activity and the adverse employment action." *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 713-14 (8th Cir. 2000), *cert. denied,* 531 U.S. 1077 (2001). *See also Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1010 (8th Cir. 2005). In the absence of direct evidence, the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), described in the religious employment discrimination analysis above applies to retaliation claims. *Buettner,* 216 F.3d at 713.

Mr. Ollis claims that HearthStone retaliated against him by firing him for his objections to participating in the MBE program, which he contends conflicted with his own religious beliefs. For the reasons stated in the *McDonnell Douglas* analysis of Mr. Ollis's religious employment discrimination claim above, the Court finds that there are issues of

---

[1] HearthStone also argues that it is entitled to summary judgment to the extent that Mr. Ollis claims that he experienced discrimination based upon a "hostile work environment." (Support Brief at 31). Mr. Ollis asserts in his Opposition Brief that he was discriminated against based on his religious beliefs when his employment was terminated and when he was not granted the same severance benefits that previous employees were granted. (Opposition Brief at 10). Mr. Ollis does not allege discrimination based on a hostile work environment.

material fact regarding whether Mr. Ollis was retaliated against based on his alleged religious conflict with the MBE program. Mr. Ollis has met his minimal burden of establishing a prima facie case of retaliation; HearthStone has articulated a legitimate, non-discriminatory reason for terminating Mr. Ollis; and Mr. Ollis offered evidence that his supervisor expressed to him that the reason he was terminated was because he failed "muscle testing."

***Nebraska Law Claims***

In the Complaint, Mr. Ollis alleges that HearthStone is liable under the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. § 48-1101 *et seq.* HearthStone alleges that Mr. Ollis's claims under Nebraska law are time-barred because Mr. Ollis did not file his claims for discrimination and retaliation within 300 days of the last discriminatory act. (Filing No. 22 ("Support Brief") at 39). Mr. Ollis did not address this issue in his Opposition Brief.

In Nebraska, when one files a claim with the NEOC, one must do so within 300 days of the act of discrimination. Neb.Rev.Stat. § 48-1118(2)(Reissue 2004); *Adams v. Tenneco Automotive Operating Co., Inc.*, 358 F. Supp. 2d 878, 880 (D. Neb. 2005). "If the claim is timely submitted to the NEOC... there is no other statute of limitations running against that claim while it is in the hands of the NEOC." *Id.* "If one does not file a claim with the NEOC, one has 300 days after the wrongful act to bring suit." *Id.* at 881 (citing *Adkins v. Burlington Northern*, 615 N.W.2d 469, 473 (Neb. 2000)). When the NEOC takes its "last action"[2] on a claim, it must give the claimant notice of by certified mail, return receipt requested, that

---

[2] "The last action on a complaint or charge includes the issuance of the final order after hearing, the determination of reasonable cause or no reasonable cause, and any other administrative action which ends the commission's involvement with the complaint or charge." Neb. Rev. Stat. 48-1120.01 (Reissue 2004).

11

the claimant has ninety days in which to file any court action on the claim. Neb. Rev. Stat. § 48-1120.01 (Reissue 2004). "If a party proceeds to file a claim with the NEOC and then tries to sue *after* the NEOC has *dismissed* the claim, the suit comes too late." *Tenneco*, 358 F. Supp. 2d at 881 n. 6, emphasis in original; Neb Rev. Stat. § 48-1119(4) (stating "[a] complainant who has suffered physical, emotional, or financial harm as a result of a violation of section 48-1104 or 48-1114 may, at any stage of the proceedings prior to dismissal, file an action directly in the district court of the county where such alleged violation occurred.")*; see also Metz v. ACI Worldwide, Inc.*, No. 8:02-CV-60, 2002 WL 2005719 (D. Neb. 2002) (granting motion to dismiss "because plaintiff failed to file her NFEPA claim in federal court prior to dismissal by the NEOC."). To reconcile the provisions of § 48-1120.01 and § 48-1119(4), it must be inferred that the NEOC does not "dismiss" a claim until at least 90 days have elapsed after the claimant's receipt of the notice of "last action."

In the present case, Mr. Ollis's employment was terminated on October 31, 2003. Mr. Ollis filed a Charge of Discrimination with the NEOC on May 4, 2004, which was within 300 days of the last alleged discriminatory act. On December 14, 2004, the NEOC issued a Commission Determination, which was a "last action" under § 48-1120.01, wherein it found that the evidence was insufficient to support the allegations of discrimination. (Ollis Depo. 159:6-17). The record does not reflect when Mr. Ollis received notice of the Commission Determination, triggering the start of the ninety-days in which he could bring a court action. Mr. Ollis filed this action on March 15, 2005. Because it is HearthStone's burden to demonstrate that the NFEPA claims were not timely filed, HearthStone's summary judgment motion respect to Mr. Ollis's state law claims is denied.

For the reasons stated in this memorandum,

IT IS ORDERED:

1.) Defendant HearthStone Homes, Inc.'s Summary Judgment Motion (Filing No. 21) is granted in part and denied in part as follows:

HearthStone Homes, Inc.'s motion is granted with respect to Plaintiff's claim of Religious Employment Discrimination based on upon the amount of Mr. Ollis's severance pay;

2.) HearthStone Homes, Inc.'s motion is denied in all other respects.

DATED this 8th day of February, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge