IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DOYLE OLLIS, JR., | ) | CASE NO. 8:05CV119 |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM |
| | ) | AND ORDER |
| HEARTHSTONE HOMES, INC., a Nebraska corporation, | ) | |
| Defendant. | ) | |

This matter is before the Court on Plaintiff's Motion for Partial Judgment Notwithstanding the Verdict (Filing No. 77), Defendant's Renewal of Motion for Judgment as a Matter of Law After Trial (Filing No. 82), and Plaintiff's Motion for Award of Attorney's Fees and Costs (Filing No. 79).

## BACKGROUND

The jury trial in this matter began on April 11, 2006. Plaintiff Doyle Ollis sought recovery against Defendant HearthStone Homes, Inc. ("HearthStone"), under theories of: 1) discriminatory discharge based on religion; and 2) retaliation. (Filing No. 1). On April 14, 2006, the jury returned a verdict in favor of Ollis on both causes of action and awarded him nominal damages in the amount of one dollar ($1.00). (Filing No. 75). The jury further found that it had not been proved by a preponderance of the evidence that HearthStone would have fired Ollis regardless of his failure to comply with the employment requirements that conflicted with his religious beliefs. (*Id.*).

## DISCUSSION

**Plaintiff's Motion for Partial Judgment Notwithstanding the Verdict**

Ollis moves for partial judgment notwithstanding the verdict, claiming that the evidence presented at trial failed to support an award of nominal damages. (Filing No. 77).

He asks the Court to enter partial judgment notwithstanding the verdict concerning the jury's award of nominal damages and to award him $58,785.66 in damages. (Filing No. 78 at 7). The term "judgment as a matter of law" now encompasses the terms "judgment notwithstanding the verdict" and "directed verdict." *Smith v. World Ins. Co.*, 38 F.3d 1456, 1460 n.1 (8th Cir. 1994) (citing Fed. R. Civ. P. 50). Therefore I will treat Ollis's motion for partial judgment notwithstanding the verdict as a motion for judgment as a matter of law.

"A motion for judgment as a matter of law under Fed. R. Civ. P. 50 *requires* that the moving party make the motion prior to the time the case goes to the jury." *Douglas County Bank & Trust Co. v. United Financial Inc.*, 207 F.3d 473, 477 (8th Cir. 2000). The Eighth Circuit Court of Appeals explained that "[p]ermitting movants for any reason to make an initial motion for judgment as a matter of law after the return of the jury verdict deprives the nonmoving party the opportunity to cure the deficiency in their case, if any exists." *Id.* at 478. In *Douglas County*, the plaintiff moved for judgment as a matter of law after the jury returned a verdict, arguing that the jury improperly considered evidence in making its determination of damages. *Id.* at 475. However, the plaintiff failed to move for judgment as a matter of law before the case was submitted to the jury as required by Fed. R. Civ. P. 50(a) and (b). *Id.* at 477. The Eighth Circuit determined that although the plaintiff could not have predicted that the award of damages would be smaller than anticipated until after the jury reached a verdict, the plaintiff theoretically could have filed a Rule 50 motion before the jury retired, alleging there was no evidentiary basis for the jury to find that the damages were less than the amount the plaintiff was seeking. Therefore, the Eighth Circuit affirmed the district court's denial of the plaintiff's motion. *Id.* at 478.

Here, Ollis did not move for judgment as a matter of law until after the jury reached a verdict. Furthermore, Ollis had the opportunity, but failed, to object to Jury Instruction

No. 12, which permitted the jury to award nominal damages if it found that his damages had no monetary value.  (Filing No. 59, Instr. No. 12).  For these reasons, Ollis's motion for partial judgment notwithstanding the verdict is denied.

**Defendant's Renewal of Motion for Judgment as a Matter of Law after Trial**

At the close of Ollis's case in chief, HearthStone moved for judgment as a matter of law on all of Ollis's claims.  (Filing No. 89 at 254:10-14).  I took HearthStone's motion under advisement and later denied it.  (*Id.* at 272:5-8; 362:6-9).  HearthStone again moved for judgment as a matter of law before the case was submitted to the jury, and I denied HearthStone's motion.  Following the verdict, HearthStone filed a Renewal of Motion for Judgment as a Matter of Law after Trial.  (Filing No. 82).  Pursuant to Fed. R. Civ. P. 50, HearthStone asks the Court to grant HearthStone judgment as a matter of law, arguing that "there is no legally sufficient evidentiary basis for a reasonable jury to find that [Ollis] established by a preponderance of the evidence all elements necessary to prove his claim[s] of discriminatory discharge and retaliation."  (Filing No. 93 at 3).

"A grant of judgment as a matter of law following a jury verdict is appropriate only when the evidence is 'entirely insufficient to support the verdict.'" *Garcia v. City of Trenton*, 348 F.3d 726, 727 (8th Cir.2003) (quoting *Belk v. City of Eldon*, 228 F.3d 872, 878 (8th Cir. 2000)).  Failure of proof on an essential element of a claim entitles the moving party to judgment as a matter of law.  *Fox v. T-H Cont'l Ltd. P'ship*, 78 F.3d 409, 413-15 (8th Cir. 1996).  The Eighth Circuit has stated: "We are 'reluctant to set aside a jury's verdict and will not do so lightly.'" *Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894, 900 (8th Cir. 2006) (citing *Kelly v. Armstrong*, 206 F.3d 794, 797 (8th Cir.2000).

When reviewing a motion for judgment as a matter of law, this Court must: "(1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts

3

supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn." *Winskowski v. City of Stephen*, 442 F.3d 1107, 1109 (8th Cir. 2006) (quoting *City Nat'l Bank of Fort Smith v. Unique Structures, Inc.*, 929 F.2d 1308, 1312 (8th Cir.1991).

**1.   *Discriminatory Discharge Based on Religion***

On April 13, 2006, the jury was instructed to determine whether Ollis proved the following elements by a preponderance of the evidence:

    a.    Ollis holds sincere religious beliefs that conflict with HearthStone's employment requirements; and

    b.    Ollis informed someone in a supervisory position at HearthStone that HearthStones' employment requirements conflicted with his religious beliefs; and

    c.    Ollis's failure to comply with HearthStone's employment requirements was a motivating factor in HearthStone's decision to discharge Ollis.

(Filing No. 59, Instr. 5). The jury returned a verdict in favor of Ollis on his claim of discriminatory discharge based on religion.

HearthStone argues: 1) there is no substantial evidence that HearthStone's employment requirements conflicted with Ollis's religious beliefs; 2) there is no evidence that Ollis's failure to comply with employment requirements was known by the individuals who terminated Ollis; 3) there is no evidence that Ollis failed to comply with employment requirements; and 4) there is no evidence that Ollis told a supervisor that employment requirements were against his religion. (Filing No. 93 at 6, 10, 14, 16).

4

A review of the transcript of proceedings demonstrates that there is sufficient evidence supporting the jury's verdict on the discriminatory discharge claim. Ollis testified that he was required to attend Mind Body Energy ("MBE") coaching sessions. (Filing Nos. 88-90 ("Transcript") at 38:9-39:18). Ollis testified that the purpose of MBE coaching sessions was to "cleanse your negative energy" and that past lives could be a source of negative energy. (*Id.* at 35:17-38:5). Former HearthStone manager John Risley also testified that he believed attendance at MBE sessions was an employment requirement. (*Id.* at 290:3-16). Risley testified that he counseled employees to set up MBE appointments in order to avoid termination. (*Id.* at 290:23-21). Risley further testified that attendance at MBE sessions was tracked. (*Id.* at 292:3-6; 293:6-9).

Ollis testified that "connectedness" and a belief in past lives were company values and that these values conflicted with his religious beliefs. (*Id.* at 37:3-23, 49:4-9). Ollis testified that Rachel Langford was his supervisor and that he informed her of the conflict between employment requirements and his religious beliefs. (*Id.* at 31:5-17; 37:16-23; 93:11-12). Langford testified that she recommended Ollis for the job at HearthStone, trained him, and worked with him. (*Id.* at 119:5-18; 124:24-125:5). HearthStone president, John Smith, testified that Langford and Ollis were at one time a two-person team, and Langford was the liaison between the team and the office. (*Id.* at 351:23-352:17). Ollis also testified that he informed Risley that he was not comfortable going to MBE sessions. (*Id.* at 92:10-14). Risley was Ollis's manager at some point during Ollis's tenure with HearthStone. (*Id.* at 179:19-25). Ollis further testified that he conveyed to Smith that Ollis declined to participate in an after-hours group because the subject matter to be discussed was fundamentally against his religious beliefs. (*Id.* at 42:3-43:18).

5

Resolving the factual conflicts in favor of the nonmovant – Ollis, and giving him the benefit of all reasonable inferences, I find that there is sufficient evidence to support the jury's verdict in favor of Ollis on his claim of discriminatory discharge based on religion.

**2.    Retaliation**

On April 13, 2006, the jury was instructed to determine whether Ollis proved the following elements by a preponderance of the evidence:

   a.   Ollis complained to someone in a supervisory position at HearthStone that he was being discriminated against on the basis of religion; and

   b.   Ollis reasonably believed he was being discriminated against on the basis of religion; and

   c.   Ollis's complaint of religious discrimination was a motivating factor in HearthStone's decision to discharge Ollis.

(Filing No. 59, Instr. 9).  The jury returned a verdict in favor of Ollis on his retaliation claim.

HearthStone argues that there is no evidence that the individuals who made the decision to terminate Ollis knew that he complained about religious discrimination.  (Filing No. 93 at 21).  HearthStone further argues that Ollis never complained that he was being discriminated against on the basis of religion; instead, HearthStone argues that Ollis only testified that he complained about employment requirements that were against his religion.  (*Id.* at 22).

In addition to the testimony noted in the discriminatory discharge discussion above, Ollis testified that he complained to Langford that he was not comfortable with the beliefs HearthStone was "permeating."  (Transcript at 31:11-17).  Ollis testified that despite his objections to the company beliefs, he was advised to schedule monthly sessions with an MBE coach to give the appearance that he was participating in the program.  (*Id.* at 90:9-

6

91:11). As stated above, Ollis testified that he also complained to Risley that he was not comfortable with the MBE sessions. (*Id.* at 92:10-14). Risley testified that HearthStone tracked employees' attendance at MBE sessions and discussed it at management meetings, and Risley advised employees to give the appearance that they were participating in the MBE program to avoid termination. (*Id.* at 290:23-21; 293:6-9). Furthermore, Ollis testified that Risley told Ollis that Ollis had been terminated because he failed "muscle testing," and Smith admitted that he used "muscle testing" in his decision to terminate Ollis. (*Id.* at 53:4-19; 211:7-11).

Resolving the factual conflicts in favor of Ollis, and giving him the benefit of all reasonable inferences, I find that there is sufficient evidence to support the jury's verdict in favor of Ollis on his retaliation claim. Therefore, HearthStone's renewed motion for judgment as a matter of law is denied.

**Plaintiff's Motion for Award of Attorney's Fees and Costs**

Ollis moves the Court for an order awarding him attorney's fees in the amount of $24,439.50 and costs incurred in the amount of $1,064.50, for a total of $25,504.00. (Filing No. 79). HearthStone opposes this motion, arguing: 1) Ollis is not entitled to attorney's fees because he was awarded only nominal damages; and 2) Ollis failed to prove that his requested fees are fair and reasonable. (Filing No. 95 at 4, 9).

As a preliminary matter, HearthStone objects pursuant to Fed. R. Evid. 408 to portions of the evidence submitted by Ollis, referencing settlement discussions between the parties. (*Id.* at 2). I find that Ollis's references to settlement discussions between the parties do not violate Rule 408. The references to settlement discussions were not offered "to prove liability for or invalidity of the claim or its amount," which Rule 408 prohibits.

Instead, Ollis's references to settlement discussions between the parties were offered in the context of fair and reasonable attorney's fees following a verdict in Ollis's favor.

With respect HearthStone's argument that Ollis is not entitled to attorney's fees because the jury awarded him only nominal damages, I note that Ollis's discriminatory discharge and retaliation claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Filing No. 1). Pursuant to 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988, a "prevailing party" in Title VII cases is entitled to an award of attorney's fees. *St. Louis Fire Fighters Ass'n Intern. Ass'n of Fire Fighters Local 73 v. City of St. Louis, Mo.*, 96 F.3d 323 (8th Cir. 1996). A plaintiff who is awarded nominal damages is a prevailing party under 42 U.S.C. § 1988. *Farrar v. Hobby*, 506 U.S. 103, 112 (1992). However, in *Farrar,* the United States Supreme Court stated that although the degree of a plaintiff's overall success does not affect the plaintiff's status as a prevailing party, it does bear on the reasonableness of a fee award. *Id.* at 114. The Court determined that in some circumstances, a prevailing party is not entitled to attorney's fees, and the Court noted that a plaintiff who seeks compensatory damages but only receives nominal damages is often such a party. *Id.* at 115. The Court noted that an award of nominal damages "highlights the plaintiff's failure to prove actual, compensable injury." *Id.*

The Eighth Circuit Court of Appeals follows the guidelines set forth by Justice O'Connor in her concurring opinion in *Farrar* to determine whether an award of nominal damages is merely a technical victory that does not entitle the prevailing party to an award of attorney's fees. *Piper v. Oliver,* 69 F.3d 875, 877 (8th Cir. 1995). The Eighth Circuit considers the following factors: 1) the difference between the amount of damages recovered and the amount sought; 2) the significance of the legal issue; and 3) the public

goal or purpose that the litigation served. *Id.* (citing *Jones v. Lockhart*, 29 F.3d 422, 424 (8th Cir. 1994).

Here, Ollis qualifies as a prevailing party. The jury found in favor of him on both the discriminatory discharge based on religion and retaliation claims and awarded him nominal damages. (Filing No. 75). Furthermore, the jury found it had not been proven by a preponderance of the evidence that Ollis would have been terminated regardless of his failure to comply with employment requirements that conflicted with his religious beliefs. (*Id.*).

With respect to the three factors above, first, Ollis sought $58,785.66 in damages (Filing No. 78 at 2); however, the jury awarded Ollis only nominal damages in the amount of $1.00. (Filing No. 75). Although there is a significant difference between the damages Ollis requested and the damages the jury awarded, the difference pales in comparison to the difference in *Farrar,* where the plaintiff requested $17,000,000 in damages and was awarded $1.00. *See Farrar*, 506 U.S. at 116 (O'Connor, J., concurring); *see also Lockhart,* 29 F.3d at 424 (stating that a discrepancy between $860,000 requested and $2.00 recovered paled in comparison to the discrepancy in *Farrar*). Second, the legal issues presented in this case, discriminatory discharge based on religion and retaliation, are significant issues. Ollis and other employees have a right to be free from religious discrimination and retaliation in the workplace. Third, as the Eighth Circuit stated in *Lockhart,* "civil rights litigation serves an important public purpose; '[a] plaintiff bringing a civil rights action 'does so not for himself alone but also as a "private attorney general," vindicating a policy that Congress considered of the highest priority.' " *Lockhart,* 29 F.3d at 424 (citing *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993)). Based on the outcome of this case, HearthStone and other employers may well review and modify their

policies concerning religious discrimination; therefore, an important public goal has been served. Considering these factors, I find that Ollis is entitled to an award of attorney's fees, despite the fact that he was awarded only nominal damages.

Next, I must address whether the requested fees are fair and reasonable. Ollis submitted the Affidavits of his attorneys, D. C. ("Woody") Bradford and Justin Eichmann, and that of Joseph Daly, another attorney licensed and practicing before this Court, as well as a detailed summary of the requested fees and costs. (Filing Nos. 81-2, 81-3, 81-4). HearthStone argues that: 1) Ollis has failed to present sufficient evidence that his requested fees are fair and reasonable; and 2) the amount Ollis requests is excessive. (Filing No. 95 at 9-11).

To determine whether requested fees are fair and reasonable, courts are instructed to determine the value of the services rendered as determined by the "lodestar" method. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A court must also consider whether an enhancement or reduction to the lodestar is warranted in a particular case. *Jensen v. Clarke,* 94 F.3d 1191, 1203-04 (8th Cir. 1996). Additionally, courts should also consider the "*Johnson* factors" as set forth in *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717 (5th Cir.1974), because they bear on the calculation of the lodestar. *See Winter v. Cerro Gordo County Conservation Bd.*, 925 F.2d 1069, 1074 n.8 (8th Cir. 1991). The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience,

reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

The lodestar is calculated by determining the number of hours reasonably expended on the case and multiplying them by the applicable hourly market rate for the relevant legal services. *Hensley* at 433. The prevailing party must submit documentation to establish the amount of the request; must exercise "billing judgment;" and must be mindful that '[h]ours . . . not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (*citing Copeland v. Marshall,* 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc) (emphasis original)). This Court has stated:

> With respect to hours reasonably expended, that is ultimately a judgment for the court. The issue, however, "is not whether hindsight vindicates an attorney's time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Awarding Attorneys' Fees* at 24-25 n. 116 (*quoting Grant v. Martinez*, 973 F.2d 96, 99 (2nd Cir.1992), *cert. denied*, 506 U.S. 1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993)). The Supreme Court made it clear that counsel are required to exercise billing judgment and that district courts are required to exclude from initial fee calculations hours that were not reasonably expended, including excessive, redundant, or otherwise unnecessary work. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939-40.

*Tabech v. Gunter*, 869 F. Supp. 1446, 1456 (D. Neb. 1994). "The hours reasonably expended are determined by reviewing the records submitted by counsel, verifying the accuracy of the records, and then deducting excessive, redundant, or otherwise unnecessary work. . . . [W]hen calculating the lodestar, various things are subsumed within it; that is, reductions for insufficient documentation are included in the lodestar calculation and the novelty or difficulty of the case is also included. . . . " *U & I Sanitation v. City of Columbus,* 112 F. Supp.2d 902, 904 (D. Neb. 2000).

Ollis was represented by Bradford and Eichmann of the firm Bradford & Coenen in Omaha, Nebraska. The total number of hours claimed by Bradford is 32.60, and the total

number of hours claimed by Eichmann is 107.30.  (Filing No. 81-2 at 6).   Ollis made an offer of settlement to HearthStone prior to filing the above-captioned matter and his Charge of Discrimination with the Nebraska Equal Opportunity Commission.  (Filing No. 81-2, ¶ 15).  I have considered the descriptions provided in the summary of fees and costs submitted by Bradford and Eichmann, and I have found the descriptions to be sufficiently detailed.  I find no excess or redundancy in the work.  There was an appropriate delegation of responsibilities to the appropriate attorney and there is no reason to exclude any of the attorney hours from the application.  Therefore, all hours will be included in the lodestar calculation.  This reflects my best judgment of the number of hours reasonably expended in this case and consideration of the *Johnson* factors. *See Tabech v. Gunter*, 869 F.Supp. at 1460.

Having made the findings on the reasonableness of the time spent on the matter, the lodestar method then requires the Court to determine each attorney's applicable hourly market rate for the relevant legal services.  The Supreme Court has decided that fees for legal and paralegal services should be allowed at the rates billed to clients for such services if that is the practice in the relevant market.  *Missouri v. Jenkins*, 491 U.S. 274, 285, 287-88 & n. 9 (1989).

Bradford is a principal of the law firm of Bradford & Coenen.  He was counsel of record for Ollis and assisted in the preparation of Ollis's claims for trial.  Bradford has practiced law since 1967.  He states that his customary billing rate for litigation is $200.00 per hour.  (Filing No. 81-3, ¶ 3).  Eichmann is also affiliated with the firm Bradford & Coenen.  Eichmann states that his customary billing rate for litigation is $175.00 per hour. (Filing No. 81-2, ¶ 10).  Both Bradford and Eichmann state that the charges set forth in the statements are actual charges billed to Ollis.

Joseph Daly, of the firm Sodoro, Daly & Sodoro, is licensed and practices before this Court. He has practiced in Nebraska since 1970 and is familiar with the rates charged by lawyers in Omaha, Nebraska, for cases of similar complexity. (Filing No. 81-4, ¶ 3). Daly's affidavit states that he reviewed Bradford's and Eichmann's file, the docket sheet in this matter, the pleadings, orders, verdict, exhibits, and monthly billings for services performed. (*Id.* ¶ 4). Daly states that the rates charged by Bradford and Eichmann "are reasonable as compared to the rates of lawyers with similar experience, both locally and throughout the region, and are also reasonable in comparison to the rates charged by lawyers in Omaha, Nebraska, for case of similar complexity and requiring similar expertise." (*Id.*). The Court finds that the hourly fees charged by Bradford and Eichmann in this case are reasonable in light of their experience and the relevant legal market.

The final step is to determine whether an enhancement or reduction to the lodestar is warranted in a particular case. *Jensen,* 94 F.3d at 1203-04. Ollis is not requesting the Court to enhance the lodestar; and I see no reason to do so. I do find, however, that in light of Ollis's failure to prove compensatory damages, a reduction of the lodestar is warranted. Ollis was successful in his discriminatory discharge and retaliation claims. He also prevailed on the issue of whether HearthStone would have terminated him regardless of his failure to comply with employment requirements that conflicted with his religious beliefs. Based on the limited success obtained by Ollis, I will reduce his requested attorney's fees and costs by 25%. I find that Ollis is entitled to 75% of the $25,504.00 he requested, which amounts to $19,128.00 in attorney's fees and costs.

For the reasons stated in this memorandum,

IT IS ORDERED:

1) Plaintiff's Motion for Partial Judgment Notwithstanding the Verdict (Filing No. 77) is denied;

2) Defendant's Renewal of Motion for Judgment as a Matter of Law After Trial (Filing No. 82) is denied; and

3) Plaintiff's Motion for Award of Attorney's Fees and Costs (Filing No. 79) is granted in the amount of $19,128.00; HearthStone shall pay Ollis his reasonable attorney's fees and taxable costs in this matter by sending payment to his counsel, D.C. Bradford.

DATED this 12th day of June, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge